Filed 2/7/18 (unmodified opn. attached)

# CERTIFIED FOR PARTIAL PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LI GUAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>YONGMEI HU,<br><br>    Defendant and Appellant. | B276546<br><br>(Los Angeles County<br>Super. Ct. No. BC572177)<br><br>ORDER MODIFYING THE MAJORITY OPINION (NO CHANGE IN JUDGMENT) |

THE COURT:

It is ordered that the majority opinion, filed in the above-entitled matter on January 12, 2018, shall be modified in the following manner:

On page 3, in the first paragraph of the Factual and Procedural Summary, the third sentence is deleted and replaced with the following sentence:

    The parties documented the transaction in two separate, but related, documents, each dated February 23, 2011: a one-page "Agreement" signed by Guan, Hu, and Chen; and a one-page "Arrangement" signed by Chen and Hu only.

This modification does not constitute a change in the judgment.

_____

ROTHSCHILD, P. J.                     LUI, J.

Filed 1/12/18; on rehearing (unmodified version)
**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LI GUAN, | B276546 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC572177) |
| v. | |
| YONGMEI HU, | |
| Defendant and Appellant. | |

APPEALS from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Arent Fox, Malcolm S. McNeil, Allan E. Anderson and Ismael Bautista, Jr., for Plaintiff and Appellant Li Guan.

Quinn Emanuel Urquhart & Sullivan, Dominic Surprenant, and Daniel H. Bromberg for Defendant and Appellant Yongmei Hu.

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Parts II and III of the Discussion.

Plaintiff Li Guan and defendant Yongmei Hu entered into a contract under which Guan paid the purchase price for a Malibu residence (the property) to be held by Hu as the "nominal owner." Hu agreed to sell the property upon receiving instructions to do so, and to distribute the sale proceeds between the parties according to a mathematical formula in the contract. After receiving instructions to sell, Hu failed to sell the property. Guan sued Hu for causes of action arising from Hu's breach of the contract, and for fraud. Guan sought, among other relief, rescission of the contract, the return of the money Guan paid to purchase the property, a declaration that Hu is a constructive trustee of the property for Guan's benefit, and damages. The case was tried to the court, which rejected Guan's fraud claim, but found that Hu had breached the contract. The trial court denied Guan's request for rescission, but ordered that the property be sold and the proceeds apportioned between the parties in accordance with the contract. The trial court charged Hu's share with imputed rent and credited to Hu the payments she made for property-related expenses.

Hu contends that the court could not grant any relief to Guan because it had determined that Guan had failed to prove fraud or the right to rescission, and that the judgment violates Hu's right to due process. Hu further contends that the court erred with respect to determinations regarding the date of breach, the value of the property, and the award of imputed rent. We reject these contentions and affirm the judgment.

Guan also appealed, challenging an order denying his motion for leave to file an amended complaint to conform to proof at trial to add a breach of contract claim for damages. Because we affirm the judgment, Guan's appeal is moot.

2

# FACTUAL AND PROCEDURAL SUMMARY

In 2010, Hu became romantically involved with Qi Wei Chen.  At Chen's request, Guan, a Chinese businessman and friend of Chen's, loaned $2.55 million to Hu so that she could purchase a house in Malibu.  The parties documented the transaction in two separate, but related, documents, each dated February 23, 2011:  a one-page "Agreement" signed by Guan, Hu, and Chen; and a one-page "Arrangement" signed by Guan and Hu only.  Together, the two documents constituted the parties' contract (the contract).

The contract provided that Hu would hold title to the house as its "nominal owner," and that Hu would sell the house when and if instructed to do so by Chen.  Hu was required to complete the sale of the house within six months after Chen's instruction.  Upon the sale of the house, Hu was entitled to receive a percentage of the property's fair market value.  Specifically, Hu would "get 20%" if the house was "sold from Jan[uary] 1[,] 2012," and her percentage would increase by 20 percent each year the house was not sold until January 1, 2016.  Thereafter, Hu would receive "100%" of the house "as a gift from Mr. Guan."

Escrow closed in early March 2011, and Hu moved into the house shortly thereafter.  In November 2011, Chen emailed Hu telling her that "[i]t is very sad now both of us realized the relationship [cannot] work," and advising her that she was "not qualified to own the house."  A month later, in December 2011, Chen visited Hu at the Malibu house, gave her gifts, and said nothing about selling the house.

By April 2012, Chen and Hu's romantic relationship had ended. On July 21, 2012, Chen emailed Hu telling her that " '[i]t is over! Don't you re[a]lize[] it with normal sense?! S[ell] the house as instructed by [Guan] so that you could stil[l] be benefited from the deal.' " Hu, however, did not sell the house or take any steps to sell it.

In February 2015, Guan filed a complaint against Hu, alleging breach of a written contract, fraud, and other claims. In a second amended complaint, Guan alleged causes of action for breach of contract, fraud, and rescission based on breach of contract, among others. The court sustained Hu's demurrer as to each cause of action, allowing leave to amend as to the rescission cause of action only.

In September 2015, Guan filed a third amended complaint asserting three causes of action styled as "Rescission," "Cancellation," and "Common Count for Money Had and Received." The rescission cause of action was based upon the same facts Guan had previously pled in his breach of contract cause of action.

Hu thereafter propounded interrogatories concerning the contract allegations. In response to the question whether there was a breach of the contract, Guan answered "yes," and described the breach as Hu's refusal to sell the property and pay the proceeds to Guan. In response to an interrogatory regarding the nature and amount of damages, Guan identified "[m]onetary damages caused by misrepresentations and breach of contract" in the amount of "$2.655 million."

In a demurrer to the third amended complaint, Hu again asserted that Guan failed to plead any ground for rescission, and that the cause of action was "an even worse version of the

4

already-dismissed-with-prejudice breach of contract claim." In opposing the demurrer, Guan explained that he was relying in part on Civil Code section 1689, subdivision (b)(2),[1] which provides that a contract may be rescinded "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the [nonrescinding] party." Guan argued that rescission was thus adequately pled by the allegation that Hu had "breached the written Contracts by total failure to perform her obligations to sell the Property." The court overruled the demurrer.[2]

In January 2016, Guan filed a fourth amended complaint, which realleged the causes of action in the third amended complaint and added causes of action for promissory estoppel and fraud in the inducement. The rescission cause of action alleged the parties' entry into the contract, Guan's performance, and the following: "Pursuant to the terms of the contract, between February 20, 2012 and January 1, 2016, on four occasions, Plaintiff either directly, or through his authorized agent, Chen,

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] In overruling Hu's general demurrer, the court stated that Guan had "adequately allege[d] the contractual basis" for the rescission claim. The court also overruled a special demurrer that was based on Code of Civil Procedure section 430.10, subdivision (g), which provides: "In an action founded upon a contract, it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct." The court overruled the demurrer stating that "[t]he claim is for rescission, not for breach of contract; therefore, this isn't an 'action on a contract,' as to which this ground for demurrer could apply."

5

instructed Defendant by email to sell the Property.  Defendant breached the Contract by failing to sell the Property within six months of receiving unequivocal, written instructions to do so."  "Plaintiff will suffer substantial harm and injury under the Contract if it is not rescinded in that Plaintiff would lose his investment of $2,550,000 actually made to purchase the Property and lose his interest in the Property."  "Plaintiff has served Defendant with a notice of rescission of the Contract by initiating this action, and hereby demands that Defendant restore to him the consideration furnished by Plaintiff in [the] sum of $2,550,000 plus the appreciation of the Property's market value to be proved at the time of trial."  The rescission cause of action did not include any allegation of fraud or misrepresentation.  Among other relief, Guan sought:  rescission of the contract; return of the funds Guan loaned to Hu; "appreciation of the Property's market value"; a declaration that Hu is a constructive trustee of the property for Guan's benefit; compensatory damages of no less than $2,550,000; and such other and further relief as the court deems just and proper.

Hu answered the fourth amended complaint with a general denial and asserted numerous affirmative defenses to the contract claim.  The cause of action for rescission, she alleged, "is actually a cause of action for breach of contract [and] has already been dismissed with prejudice."  Hu averred that she and Guan had no contractual relationship, and that the alleged contract violated the statute of frauds and is illegal, void, and contrary to public policy.  Hu further alleged that if a contract did exist, she had no duty to perform because she did not receive an instruction to sell the property; and, because Guan failed to perform, he

6

repudiated the contract and breached the implied covenant of good faith and fair dealing.

Hu moved for summary judgment. Regarding rescission, Hu pointed out that Guan did not plead fraud as a basis for rescission, and that the claim "is actually a claim for breach of contract." In his opposition, Guan again relied on the "contractual basis for his rescission claim" based upon section 1689, subdivision (b)(2). The court denied Hu's motion.

Before trial, Hu filed a motion in limine to exclude evidence challenging or contradicting the terms of the written agreement. Guan filed an opposition to the motion in which he stated that "this case has been narrowed through the pleadings to concern only *rescission* of the Contract and related theories. The case is now about [Hu's] fraudulent conduct, requiring rescission and a full refund . . . of all the money [Guan] provided for the purchase of the property, among other remedies, and *not* about whether or not the Contract required [Hu] to sell the property." (Fn. omitted.)

One week later, Guan filed his trial brief, and asserted that he was entitled to rescission of the contract and damages for money had and received because Hu "breached the Contract by failing and refusing to take any steps to sell the Property after two written instructions from [Chen]." Guan further argued that the facts support his cause of action for promissory estoppel "in the event that [he] cannot establish a cause of action for breach of contract." In addition, Guan asserted that he is entitled to damages based on fraud in the inducement.

At the outset of the bench trial, the court asked Guan's counsel whether Guan was asserting breach of contract or "simply going for broke and asserting that the contract was [void *ab initio*] because of fraud." Counsel stated: "We do have the rescission claim, there had been an earlier contract claim the court struck. So we have promissory estoppel and the rescission, which we believe is a contract claim. In our opinion, . . . Hu breached the agreement and the arrangement by not doing anything to sell the house once instructed. So yes, we're seeking breach of contract. This is not a go-for-broke claim."

Hu's counsel responded to this point by asserting that "[t]here's no breach of contract in the fourth amended [complaint]. What there is, . . . is a fraud inducement. There's a cancellation claim for canceling the facially valid but void agreement, void because of fraud. . . . There's promissory estoppel which is a weak form of fraud. There was a promise, the promise on intended reliance. There's rescission. Now, rescission—breach of contract cannot support rescission. What triggers rescission is extensively and exclusively set forth in Civil Code section 1689. Breach of contract is not one of them. Now, the fourth amended complaint only alleges breach of contract to support rescission, but should [the court] during the trial decide to exercise [its] discretion and conform the pleadings to proof, a claim of fraud could in some circumstance, although I think not this one, give rise to rescission." He added: "I do think this is entirely a fraud claim. That's what plaintiff told you in opposition to motions in limine [and] the only way to read their claims."

Hu's defense at trial was based on three theories. First, Chen, as Guan's agent, failed to fulfill his obligations under the contract to make the arrangements necessary to sell the house; therefore, Hu's contractual obligation to sell the property was never triggered and she did not breach the contract. Second, Hu intended to perform when she entered into the contract and, therefore, did not commit fraud. Third, the money used to purchase the house was Chen's, not Guan's, and, therefore, Guan has suffered no damage. Regarding rescission, Hu's counsel acknowledged that the claim was based on breach of contract, but he asserted that rescission cannot be based on that theory. This case, he asserted, "is entirely a fraud claim."

At trial, evidence was adduced regarding the negotiation and formation of the contract, Hu's intent in entering into the contract, the parties' understanding of the contract's terms, the purchase of the house, the source of the purchase money, Chen's instructions to Hu to sell the property, Hu's failure to sell the property after receiving such instructions, and the value and rental value of the property at different times. Hu testified that she had an obligation under the contract to sell the property if she received an "adequate and a proper—serious written instruction to sell the house," but believed that she never received such instructions. She further testified that she paid the property taxes, property insurance, and maintenance expenses for the property.

In closing argument, Guan's counsel argued that the evidence established that Hu had done nothing to "demonstrate that she performed in any fashion . . . under the contract." After the court questioned Guan's counsel regarding the fraud claim, counsel pointed out that "only the fifth cause of action is for fraud

9

[in] the inducement." Even if the court does not find fraud, he explained, the other four causes of action are "all based on failure of consideration." Thus, he stated, "all roads in this case lead to rescission." By this, Guan's counsel explained, he meant that each of Guan's "causes of action invoke the court's equitable authority, and the court can take whatever action it deems appropriate and equitable under the law to make sure that [Guan] is protected and gets his money back."

At the outset of Hu's counsel's closing argument, counsel stated that he would address the lack of evidence that Hu did not intend to perform the contract. The court interjected that he must also "address whether or not there was a breach of the contract once the contract was made." Counsel stated that he would do so, and acknowledged that "most of [Guan's] . . . case put on at trial was a breach of contract." He asserted, however, that there was "no breach of contract claim" and that "all of [Guan's] claims are fraud-based."

The trial court issued a tentative decision and, after considering Hu's objections, a final statement of decision. The court found that Guan had failed to prove his fraud allegations, and that the evidence was insufficient "to support rescission of the contract on the statutory grounds." The court further found that Hu breached the contract in August 2012 by "failing, after receiving Chen's instruction in his July 21, 2012 email to her, to sell the house and remit the proceeds, net of her share, to Guan." The court stated that "a party asserting the right to rescind a contract may recover damages for its breach if rescission is not found."

Based on the findings that Hu had breached the contract, the court granted the following relief:  The court declared Guan the beneficial owner of the property, and appointed a receiver to sell the property; Hu was to receive 20 percent of the value of the property; Hu should be reimbursed $274,400 for her payment of property taxes, insurance, and maintenance expenses for the property; and Hu would be charged with $10,000 per month fair rental value for the 43 months that she possessed the property after her breach, for a total of $430,000.  These remedies, the court later explained, were based "upon the allegations and prayer" of the fourth amended complaint, which "provide[d] adequate notice of plaintiff's claims against defendant."

On June 18, 2016, the court entered an amended judgment in accord with its statement of decision.  Hu and Guan each appealed.  Guan challenged only the court's order denying his motion for leave to amend to conform to proof.

## DISCUSSION

### I.   The Court Did Not Err in Granting Guan Relief Based on Hu's Breach of the Contract.

Hu contends that the court, after finding that Guan failed to prove fraud or the right to rescission, erred by granting Guan relief based on Hu's breach of the contract.  We disagree.

### *A.*

According to Hu, each of the causes of action asserted in Guan's fourth amended complaint "failed because [Guan] failed to prove that Hu did not intend to perform her contractual obligation to sell [the property] when she entered into the February 2011 contract."  The argument is without merit because

11

the only cause of action in the fourth amended complaint that alleged that Hu did not intend to perform her obligations at the time she entered into the contract agreement was the fifth cause of action for fraudulent inducement. None of the first four causes of action—labeled rescission, cancellation, common count for money had and received, and promissory estoppel—included any allegation of Hu's fraudulent intent.

With respect to Guan's first cause of action, labeled "Rescission," Guan alleged: The parties had entered into the contract; Guan performed his duties under the contract; Hu breached the contract by failing to perform her obligation to sell the property as instructed; and Hu's breach caused Guan harm. A plain reading of the allegations reveals that the rescission cause of action is unrelated to, and independent of, the allegation of Hu's fraudulent intent asserted in the fifth cause of action. The court's conclusion that Guan failed to prove such intent, therefore, is irrelevant to the merits of the first cause of action.

Nor was an allegation or proof of Hu's fraud *necessary* for Guan's first cause of action. In that cause of action Guan sought rescission. Although fraudulent inducement is one ground for rescission (§ 1689, subd. (b)(1)), a party to a contract is also entitled to rescission when the other party's breach constitutes a material failure of consideration. (*Id.*, subd. (b)(2); *Wyler v. Feuer* (1978) 85 Cal.App.3d 392, 403-404; *Crofoot Lumber, Inc. v. Thompson* (1958) 163 Cal.App.2d 324, 332-333; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 877, pp. 922-923.)[3] With one possible exception (discussed below),

_____

[3] "Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for

12

Guan consistently asserted Hu's breach and the resulting failure of consideration as a basis for his rescission cause of action. In opposing both Hu's demurrer to the rescission cause of action in the third amended complaint and Hu's motion for summary judgment on the fourth amended complaint, Guan relied on the failure of consideration basis for rescission. Guan reasserted Hu's breach of the contract in his trial brief and, as Hu's counsel acknowledged, "most of [Guan's] case put on at trial was a breach of contract."

The one exception, which Hu emphasizes, is language in Guan's opposition to a motion in limine in which Guan stated that this "case is now about [Hu's] fraudulent conduct, . . . and *not* about whether or not the Contract required [Hu] to sell the property." Even if that statement, when viewed in isolation, arguably narrowed Guan's theory of rescission, Guan's trial brief, filed one week later, clarified that he was seeking rescission on the ground that Hu "breached the Contract by failing and refusing to take any steps to sell the Property after two written instructions from [Chen]."

---

performance by the other party." (*Bliss v. California Cooperative Producers* (1947) 30 Cal.2d 240, 248.) Not every breach or failure to perform, however, will warrant the remedy of rescission; the failure "must be 'material,' or go to the 'essence' of the contract." (*Wyler v. Feuer*, *supra*, 85 Cal.App.3d at pp. 403-404; see also *Crofoot Lumber, Inc. v. Thompson*, *supra*, 163 Cal.App.2d at pp. 332-333; *Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 411-412; *Medico-Dental etc. Co. v. Horton & Converse* (1942) 21 Cal.2d 411, 433; *Wilson v. Corrugated Kraft Containers* (1953) 117 Cal.App.2d 691, 696.)

Any doubt as to Guan's theories at trial was removed when the court inquired at the outset of trial as to whether Guan was "going for broke" based on the theory of fraudulent inducement, and Guan's counsel clarified that he was not; the rescission claim, he stated, was based on the theory that "Hu breached the agreement and the arrangement by not doing anything to sell the house once instructed. . . . [W]e're seeking breach of contract. This is not a go-for-broke claim." In light of the otherwise consistent assertion that Guan was pursuing a contract-based theory of rescission, as well as the allegations in the operative pleading, the lone statement in Guan's opposition to a motion in limine did not alter the nature of Guan's first cause of action.[4]

Hu also relies on the trial court's language in its statement of decision that each of Guan's "causes of action allege[s] that Hu had no intention when she signed the contract to comply with a

---

[4] The concurring and dissenting opinion (the concurrence/dissent) relies on the statement in Guan's opposition to a motion in limine for the conclusion that Guan's "claim . . . was not based on Hu's breach of a valid contract," but rather "on Hu's fraudulently inducing Guan to enter into an invalid contract." (Conc. & dis. opn. *post*, at p. 6.) The concurrence/dissent implies that Guan asserted a single "claim," not multiple claims, and that Guan changed that claim from a rescission claim based on breach of contract to a rescission claim based on fraudulent inducement. The implication is belied by the record. Guan asserted five causes of action, only one of which is based upon an allegation of fraud. Moreover, Guan's operative complaint, his discovery responses, his trial brief, his counsel's statements to the court at the outset of trial, and the evidence at the trial show that Guan pursued both the contract-based rescission claim and the fraudulent inducement claim.

14

written instruction to sell the house." The court's mistaken belief that all causes of action included a fraud allegation was trivial and not consequential; the important point was that Guan did allege breach of contract, and the court was aware of it.

### B.

Hu further contends that Guan's "contract claim was dismissed long before trial, [and he] had no right to advance that claim at trial." She points to the court's order sustaining the demurrer without leave to amend to the breach of contract cause of action in the second amended complaint. That ruling, Hu contends, puts that claim "at rest" and barred Guan from reviving it at trial. For the reasons that follow, we reject this argument.

We agree with the position Hu took in the trial court proceedings that Guan's rescission cause of action was "actually a claim for breach of contract." Generally, a cause of action is the "right to obtain redress for a harm suffered, *regardless of the specific remedy sought or the legal theory . . . advanced*." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798, italics added.) Thus, although a breach of contract may be redressed in various ways, such as by rescission, specific performance, declaratory relief, the payment of damages, or injunctive relief (see 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 878, pp. 924-925), the remedy is not the cause of action. And where various remedies are sought for the same breach, there is a single cause of cause of action for breach of contract; the " 'seeking of different kinds of relief does not establish different causes of action.' " (*Marden v. Bailard* (1954) 124 Cal.App.2d 458, 465.)

15

Here, Guan labeled his first cause of action "Rescission." "Rescission," however, "is *not* a cause of action; it is a remedy." (*Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 70.) To determine the nature of Guan's cause of action, we look at the facts alleged, not its label. (See, e.g., *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908; *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.) It is "an elementary principle of modern pleading that the nature and character of a pleading is to be determined from its allegations, regardless of what it may be called, and that the subject matter of an action and issues involved are determined from the facts alleged rather than from the title of the pleadings or the character of the damage recovery suggested in connection with the prayer for relief." (*McDonald v. Filice* (1967) 252 Cal.App.2d 613, 622; accord, *Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.* (2002) 95 Cal.App.4th 1273, 1281; *Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 98.) As set forth above, and as Hu asserted below, the allegations in Guan's first cause of action for "rescission" establish a cause of action for breach of contract, regardless of its label or the remedies he sought.

To the extent that the court's rulings allowing Guan to proceed with his contract-based rescission cause of action are inconsistent with its prior ruling sustaining Hu's demurrer to the second amended complaint's breach of contract cause of action without leave to amend, the later rulings supersede the prior ruling. The trial court's inherent power to do so is well-settled. (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107; *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 388; *Nave* v. *Taggart* (1995) 34 Cal.App.4th 1173, 1177.) If the rule were otherwise, a court that " 'realizes it has misunderstood or misapplied the law,

16

[would be] prohibited from revisiting its ruling, whether it realize[d] its mistake 10 minutes or 10 days later, and no matter how obvious its error or how draconian the effects of its misstep. "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors." ' " (*Le Francois v. Goel, supra*, 35 Cal.4th at p. 1105; see also *Greenberg v. Superior Court* (1982) 131 Cal.App.3d 441, 445 [trial court has inherent power to "correct a ruling which it believes to have been erroneous"].)

This rationale applies forcefully here. Guan had adequately pleaded a cause of action for breach of contract in his second amended complaint, and the trial court erroneously sustained Hu's demurrer to that cause of action. Guan's allegations of the elements of breach of contract in the third amended complaint were not substantially different from the allegations in the second amended complaint; each made identical allegations regarding the parties' entry into the contract, the terms of the contract, Guan's performance, and Hu's breach of the contract. The only material change Guan made was to add the remedy of rescission.[5] Indeed, as Hu argued, the third amended complaint was essentially a "rehash of the exact same allegations" that failed to support a cause of action in the second amended complaint. The court, however, correctly determined that Guan had adequately pleaded a contractual basis for the claim and, having "realize[d] its mistake" (*Case v. Lazben*

---

[5] The request for compensatory damages remained, but was moved to the prayer for relief in the fourth amended complaint.

17

*Financial Co.* (2002) 99 Cal.App.4th 172, 185), allowed the restated claim to proceed.

The concurrence/dissent takes the untenable position that once the court sustains a demurrer without leave to amend a cause of action it can never change its mind. The concurrence/dissent would, in effect, hold that interim orders are final judgments—a principle contrary to settled law, as discussed earlier. The concurrence/dissent's reliance on *Smith v. City of Los Angeles* (1948) 84 Cal.App.2d 297 (*Smith*) for this proposition does not withstand scrutiny. Citing to *Smith,* the concurrence/dissent states "that 'orders sustaining demurrers without leave to amend' effectively 'constitute a trial on the merits' and, as such, 'must be considered as judgments after trial.' " (Conc. & dis. opn. *post*, at p. 19, quoting *Smith*, *supra*, 84 Cal.App.2d at p. 302.) *Smit*h, however, actually states: "The *judgments* rendered herein, being upon orders sustaining demurrers without leave to amend, constitute a trial on the merits, based upon issues of law raised by such demurrers, and must be considered as judgments after trial." (*Ibid*.) By selectively quoting only portions of the relevant sentence, the concurrence/dissent conjures a completely new and unworkable legal principle—that interim orders constitute final judgments.

The concurrence/dissent cites *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080 for the proposition that a dismissal with prejudice " 'clearly means the plaintiff 's right of action is terminated and may not be revived.' " (Conc. & dis. opn. *post*, at p. 19, quoting *Roybal v. University Ford*, *supra*, at pp. 1086-1087.) In that case, the court held that a plaintiff's voluntary dismissal of a complaint with prejudice operated as a retraxit and barred a subsequent action on the same cause under

18

the doctrine of res judicata.  (*Id.* at pp. 1085-1087.)  Here, the order sustaining the demurrer to Guan's second amended complaint was not a retraxit, and res judicata does not apply to interim, interlocutory rulings.  (See *Imperial Beverage Co. v. Superior Court* (1944) 24 Cal.2d 627, 634; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 770; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 363, p. 985; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 308, p. 763.)

The concurrence/dissent states that our opinion "would invite havoc" (conc. & dis. opn. *post*, at p. 21) by allowing a trial court to countenance a plaintiff's realleging a claim after the court sustains a demurrer without leave to amend to that claim. There will be no havoc.  Indeed, if the court continued to believe that the reasserted claim had no merit, the court could sustain a demurrer filed by a defendant so pointing out, strike the new claim on its own motion, and sanction the plaintiff if the pleading was filed in bad faith or for an improper purpose.  (See Code Civ. Proc., §§ 128.5, 128.7; cf. *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 829; *Ricard v. Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel* (1992) 6 Cal.App.4th 157, 162.)  Here, however, the realleged claim gave the court an opportunity to correct its earlier error—the sustaining of the demurrer to the contract cause of action in the second amended complaint—and conformed to the commendable purpose of making interim orders changeable.

The concurrence/dissent's complaint that the trial court did not give Hu notice that it was considering allowing the stricken claim relies on form over substance.  Whether the court or Guan gave that notice is immaterial.  What matters is that Hu had notice of Guan's contract claim upon service of the fourth

19

amended complaint and an opportunity to oppose the claim's resurrection, which she did more than once.

## *C.*

Although Guan's "rescission" cause of action was, in substance, a breach of contract cause of action, the question remains whether the court, having found that Guan was not entitled to the remedy of rescission, could nevertheless award damages based upon Hu's breach. We conclude that it could.

In the fourth amended complaint, Guan sought rescission and compensatory damages, among other relief. The alternative remedies may be asserted in the same action. (§ 1692; *Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1385; *Karapetian v. Carolan* (1948) 83 Cal.App.2d 344, 351-352; see generally 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 966, pp. 1015-1017.) A party may thus seek "rescission first and damages if he cannot have it." (*Bancroft v. Woodward* (1920) 183 Cal. 99, 102.)[6] Here, Guan expressly sought rescission and

---

[6] The concurrence/dissent cites *Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 296, for the statement that an " 'action for rescission and an action for breach of contract are alternative remedies,' " and that the " 'election of one bars recovery under the other.' " (Conc. & dis. opn. *post*, at p. 18, italics omitted.) If the concurrence/dissent is suggesting that a plaintiff who is harmed by a defendant's breach of contract cannot pursue each of the alternative remedies of damages and rescission at trial, it is incorrect. Although a plaintiff cannot obtain both rescission and damages for the same wrong, it is well-settled that he or she can seek each in the alternative. (See *Williams v. Marshall* (1951) 37 Cal.2d 445, 457;

compensatory damages, among other relief.  Although rescission may have been his preferred remedy, he was entitled to recover damages if, as the court determined in this case, "he cannot have it."  (*Ibid*.)

The concurrence/dissent asserts the trial court found that there was a failure of consideration and thus  Guan had prevailed on his rescission claim on that basis.  (Conc. & dis. opn. *post*, at p. 10.)  First, the trial court made no such finding.  Rather, it expressly rejected that conclusion and found the opposite true, that the evidence did not establish grounds for rescission.  Second, as the court found, Hu partially performed under the contract by "protecting the property" and paying the property taxes, insurance, and maintenance expenses during her possession of the property.  Lastly, we note that the concurrence/dissent's theory was not even proposed by either party.

### D.

Hu argues that the judgment violated her right to due process.  In particular, she contends that she "went to trial reasonably believing that she would win if [Guan] did not prove that she had a fraudulent intent not to perform because the claims in the operative complaint were all premised on such an intent."  She argues that she also "believe[d] that that contract claim could not be an issue because [Guan's] breach of contract claim had been dismissed long before trial at the pleadings stage, and [Guan] had adamantly asserted that there were no contract

---

*Walters v. Marler* (1978) 83 Cal.App.3d 1, 16; 1 Witkin, Summary of Cal. Law (11th ed. 2017) Contracts, § 936, pp. 986-987.)

issues left in the case."  These arguments are generally refuted by the conclusions we reached above:  Guan's first four causes of action were based on Hu's breach of contract, not her alleged fraudulent intent; and Guan's breach of contract claim was indisputably in play in the fourth amended complaint.

Moreover, even if Guan's first cause of action as pleaded was ambiguous as to the nature of his claim or remedies he sought, the record reveals that Hu had ample notice of the breach of contract claim and potential remedies.  As described above, Guan represented his rescission cause of action as one based on breach of contract and Hu responded to it as such.  In opposing Hu's demurrer to that cause of action in the third amended complaint, Guan explained he was relying on the allegation that Hu had "breached the written Contracts by total failure to perform her obligations to sell the Property."  After Guan realleged the rescission cause of action in substantially the same form in the fourth amended complaint, Hu, in her answer, expressly characterized the claim as "a cause of action for breach of contract," and asserted numerous affirmative defenses to breach of contract.  Hu's motion for summary judgment again asserted that Guan's first cause of action was "actually a claim for breach of contract," and argued that the court should grant summary adjudication of the cause of action because the court had previously sustained a demurrer to Guan's breach of contract claim.

Hu propounded interrogatories concerning Guan's contract allegations, to which Guan affirmed he was seeking damages for breach of contract and identified "[m]onetary damages caused by misrepresentations and *breach of contract*" in the amount of "$2.655 million."  (Italics added.)

22

In his trial brief, Guan stated that his rescission claim was based on Hu's breach of the contract, and his counsel informed the court at the outset of trial that "we're seeking breach of contract," and that the rescission claim "is a contract claim." The evidence at trial presented by both sides was focused primarily on issues related to the breach of contract claim. In particular, the parties testified about the negotiations concerning the contract and their understanding of its terms, Guan and Chen were examined about the source of the funds used to purchase the property, and evidence was introduced concerning the communications from Guan and Chen to Hu, which Guan argued were instructions to sell and Hu argued were not. Evidence that Hu had done nothing to sell the property, as well as evidence of the rental value of the property and Hu's payments of property expenses, was also introduced. The evidence related to Hu's alleged fraudulent intent, by contrast, was remarkably brief; in essence, Hu testified that she intended to perform, and Guan attempted to impeach her with her deposition testimony that she considered the contract to be a "joke" or a "fiction." The record of the trial, in short, reveals a trial focused almost exclusively on Guan's breach of contract claim and Hu's defenses thereto.[7]

---

[7] We note that the statement of facts and procedural history in Hu's opening brief omitted almost all of the relevant facts bearing upon the question whether Guan's claims were based on breach of contract and Hu's notice thereof. The brief thus violates rule 8.204(a)(2)(C) of the California Rules of Court, which requires that opening briefs "[p]rovide a summary of the significant facts." (See *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1166; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group

## *E.*

Hu further contends that the court erred in relying on section 1692 in fashioning the remedy for Hu's breach. The second paragraph of that section provides: "If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances." Hu contends that the language, "any other relief to which [the plaintiff] may be *entitled under the circumstances*," limits the court's ability to grant "other relief" to cases where the plaintiff sought rescission along with other claims and is entitled to relief on the other claims. It cannot be applied, she argues, when the plaintiff "failed to prove any of the claims in the operative complaint."

The flaw in this argument is that Hu erroneously assumes the success of her earlier argument that all of Guan's claims were based upon fraud and that Guan had failed to prove fraud. As explained above, only Guan's fifth cause of action was based on Hu's alleged fraud, and his first cause of action was indisputably based on Hu's breach of contract. Because the court found that Hu had breached the contract and thereby caused Guan harm, the court reasonably determined that although Guan was not entitled to rescission, he was entitled to relief under the circumstances. (§ 1692; see, e.g., *FDIC v. Air Florida System, Inc.* (9th Cir. 1987) 822 F.2d 833, 841 [under section 1692, "a breach [of contract] insufficiently material to form the basis for

2016) ¶ 9:27, pp. 9-8 to 9-9, ¶ 9:126, pp. 9-38 to 9-39.) It was only after this court granted a motion for rehearing that Hu was more forthcoming.

24

rescission may entitle the aggrieved party to . . . damages"]; *Kulawitz v. Pacific etc. Paper Co.* (1944) 25 Cal.2d 664, 672 [plaintiff's failure "to establish his right to rescission did not preclude him from any other relief that might be open to him"].)

## II.  Hu's Contentions Regarding Particular Relief

Hu also challenges particular provisions of the judgment. We address each in turn.

### A.

Hu contends that the court should have applied 40 percent, instead of 20 percent, to the value of the property in determining Hu's share.  We disagree.

Under the contract, Hu is to receive 20 percent of the property's fair market value if the property "is sold from Jan[uary] 1[,] 2012 on," and 40 percent "if it is sold from Jan[uary] 1[,] 2013 on."  Hu was required to "complete all the procedure[s] to sell [the property] within 6 months" after receiving Chen's instruction to sell.  Hu's duty to sell the property was triggered by Chen's July 21, 2012 email to her.  According to the contract, Hu then had six months within which to sell the property.  The court awarded Hu an amount based on the 20 percent figure because, the court explained, "Hu should have initiated procedures to sell, for instance, by interviewing or hiring a real estate broker, or advertising the house for sale, not later than August, 2012.  Because Hu did not take any steps to initiate a sale she is not entitled to a reasonable period, much less the 6 months specified in the contract, to complete the sale."

The court did not err. Because Hu did not sell the property, there is no date of sale from which the court could determine which percentage should be applied. The inability to determine a date of sale was, of course, because Hu breached the contract by failing to sell the property. Indeed, as the court found, Hu did not merely fail to sell the property, she did not even take any steps to do so. The trial court determined that Hu should not profit by her wrongdoing. We agree.

### B.

Hu contends that she is entitled to a percentage of the *actual* sale proceeds, not the percentage of the property's value at the time of the breach. We disagree. If Hu had performed her contractual obligation, she would have received no more than 20 percent of the proceeds from a sale that should have taken place in 2012. According to Hu, however, she should receive the benefit of any appreciation in the property after her breach. She cites no authority to support her argument, and her position is contrary to the maxim that one may not benefit by his or her own wrong. (§ 3517; *Post v. Jacobsen* (1960) 180 Cal.App.2d 297, 303.)

Hu argues that the property should have been valued as of the time of breach. We agree that that would have been the ideal valuation date. But neither party presented evidence of that value. In the absence of evidence of the value at the time of breach—August 2012—the court reasonably used the closest-in-time valuation presented—March 2011.

## *C.*

Lastly, Hu contends that the court erred by charging her with $430,000 of imputed rent because Guan waived any right to such rent by failing to identify such damages prior to trial. We disagree. Although Guan did not specifically ask for imputed rent in his prayer for relief or pretrial discovery, he introduced evidence of the property's rental value at trial without a relevance objection from Hu. Moreover, when the court asked Hu's counsel during closing argument whether Hu should have to pay rent "for the holdover period [while] she's lived in that house without paying rent," counsel only asserted that requiring her to pay rent would be unfair because neither Guan nor Chen ever asked her to vacate the property. Counsel also stated that any payment of rent should be apportioned based upon the apportionment of the sale proceeds in the contract. Significantly, counsel did not assert that Guan's claim for rent was made too late or violated Hu's right to due process. Nor did counsel request a continuance to counter the fair rental amount. Hu thus waived any claim of error by not asserting it timely.

### III. Guan's Appeal from Order Denying His Motion for Leave to Amend Is Moot.

Because we conclude that the judgment should be affirmed based on the court's application of section 1692, Guan's appeal challenging the order denying his motion for leave to amend is moot.

27

## DISPOSITION

The amended judgment is affirmed.  Guan is awarded his costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**.


                              ROTHSCHILD P. J.

I concur.



          LUI, J.

JOHNSON, J., Concurring and Dissenting.

The trial court reached the right result (a judgment in favor of Li Guan (Guan) and against Yongmei Hu (Hu)), but for the wrong reasons. Contrary to what the trial court found, Guan proved his rescission cause of action. Guan's rescission cause of action had two prongs, one based on fraud and one based on a failure of consideration. The trial court correctly found that Guan had not proved his fraud theory of rescission. The trial court, however, failed to consider the second potential basis for the rescission cause of action when crafting its statement of decision. The evidence unequivocally established the failure of consideration basis for rescission. The court's error was compounded by Guan, who, instead of advising the trial court of its omission, attempted to resuscitate his breach of contract claim which had been dismissed with prejudice from the case months before trial.

Similarly, while the majority correctly determines that the judgment for Guan should be affirmed, its Sherlockian efforts to conclude that a cause of action which the trial court had expressly dismissed had not really been dismissed undermine the sacrosanct principles of procedural due process, notice, and fairness. The majority engages in a revisionist reinterpretation of isolated statements in the trial record in order to shoehorn back into the case Guan's previously dismissed breach of contract cause of action. The majority would have us believe that while the trial court knew how to expressly and explicitly dismiss the breach of

contract claim, it inexplicably chose not to be express or explicit when it ostensibly determined to reverse its earlier decision. To bolster its conclusion, the majority engages in a number of grave distortions to both the record and the law, including the following: claiming without any support whatsoever from the record that the trial court knew that it had made an "error" (maj. opn. *ante*, at p. 19) when it dismissed Guan's breach of contract cause of action without leave to amend and therefore "allowed" (maj. opn. *ante*, at p. 18) Guan to replead his breach of contract claim as a rescission claim; and arguing that Guan's rescission cause of action was not a rescission claim at all but actually a breach of contract claim and that the dismissal with prejudice of Guan's breach of contract was not really a dismissal with prejudice.

While I agree that the judgment in favor of Guan should be affirmed, I would remand the matter to the trial court for a reconsideration of the damages award. Since Guan actually prevailed on his rescission cause of action, the court should restructure the award so that it complies with rescission principles (i.e., restores Guan to the status quo ante).

## I.     Guan's Dual-Pronged Rescission Cause of Action

The majority asserts that Guan "did allege [at trial] breach of contract and the court was aware of it." (Maj. opn. *ante*, at p. 15.) The majority is wrong on both accounts. The record plainly shows that Guan tried but failed to allege a breach contract cause of action. The record also shows that Guan alleged a dual theory rescission cause of action based

2

on fraud and failure of consideration.  Finally, the record shows that while the trial court was well aware of Guan's fraud theory of rescission, it was not similarly attuned to Guan's failure of consideration theory.

    A.    GUAN'S DUAL THEORY OF RESCISSION

As noted above, Guan initially pursued, not a rescission cause of action, but a breach of contract claim. Guan, however, could not allege successfully a breach of contract cause of action, and the trial court ultimately dismissed that claim without leave to amend.  Only then did Guan elect to pursue a rescission cause of action.  Under the Civil Code, a plaintiff seeking rescission may do so under a number of different theories, including fraud or a failure of consideration, (Civ. Code, § 1689, subd. (b)(1) & (2)[1]), which is exactly what Guan did here.  Guan made clear in his opposition to Hu's demurrer to his third amended complaint (TAC) that his election to seek rescission was based on two distinct theories:  fraud *and* a failure of consideration:  "TAC alleged the facts that [Hu] made misrepresentations to induce [Guan] to enter into the Contracts and thus satisfied the requirements of § 1689(b)(1).  Additionally, TAC alleged the facts that [Hu] breached the written Contracts by total failure to perform her obligations to sell the Property and this satisfied the requirements of § 1689(b)(2)."

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

3

B.    THE DUAL NATURE OF GUAN'S THEORY OF RESCISSION GETS LOST IN THE SHUFFLE

Unfortunately for all concerned, Guan's dual theory of rescission appears to have been largely overshadowed by trial events and by Guan's heavy emphasis of his fraud theory of rescission.

1.    *Guan opted to give primary emphasis at trial to his fraud theory of rescission*

On December 21, 2015, the tenor and direction of Guan's case changed in an important way.  On that day, the Hu testified at her deposition that she regarded the parties' contract as a "fiction," a "joke," and that, as a result, she "never had any plan to respond" to any directive by Guan to sell the house.

Guan seized on Hu's deposition testimony and adjusted his strategic focus of the case accordingly.  On January 21, 2015, less than a month after Hu's deposition, Guan filed his fourth amended complaint (FAC), the operative pleading at trial.  The FAC, among other things, added a companion cause of action to Guan's rescission claim, a cause of action for fraud-in-the-inducement.  In his new fraud-in-the-inducement claim, Guan quoted Hu's deposition testimony about "never" having an intent to comply with the terms of the parties' agreement.

In pretrial briefing, Guan repeatedly stressed the central importance of Hu's deposition testimony in shaping the issues for trial.  For example, in opposition to one of Hu's motions in limine, Guan stated that "the character of the case changed dramatically with the filing of the [FAC] on

4

January 21, 2016, incorporating facts that Guan learned from Hu's deposition a few short weeks ago." Guan explained that "after Hu gave her deposition and effectively admitted that she fraudulently never intended to honor the terms of the contract, the issue of Hu's 'equity' was extinguished because her conduct supports rescission of the Contract."

In order to clarify for the trial court just how much the his theory of the case had changed as a result of Hu's deposition testimony, Guan noted that the issue of Hu's equity in the Malibu house "was once relevant when the case was a breach of contract action because the timing of valid instructions to sell the property would have impacted whether or how much 'equity' [Hu] would be allowed to retain upon the sale of the property." But because Guan's case was now based on a fraud theory of rescission and a fraud-in-the-inducement cause of action, Hu's alleged equity was "no longer directly at issue."

According to Guan, the "*main focus of the currently operative complaint is now on the false promises by [Hu] and her unequivocal expression at her deposition that she had no intention of performing relevant duties under the Contract vis a vis [Guan] when she entered into it*. (Italics added.)

Just in case there was any doubt in the trial court's mind about the focus of Guan's litigation strategy at trial, Guan explained that "this case has been narrowed through the pleadings to concern only *rescission* of the Contract and related theories. *This case is now about [Hu's] fraudulent conduct, requiring rescission* and a full refund from [Hu] to

5

[Guan] of all of the money he provided for the purchase of the property . . . and *not* about whether or not the Contract required [Hu] to sell the property if [Guan] (and/or if Mr. Chen) gave [Hu] written instructions to sell the property." (Second italics in original.) In other words, Guan's claim against Hu—as clarified and stated by Guan himself—was not based on Hu's breach of a valid contract that both parties intended from the start to fully honor; rather, Guan believed his strongest theory of liability hinged on Hu fraudulently inducing Guan to enter into an invalid contract—invalid because she never had any intention of fulfilling any of her contractual promises.

Consistent with this viewpoint, Guan emphasized in his trial brief Hu's statement that the contract was a "fiction" and detailed for the court the "substantial evidence" that supported his fraud theory of rescission and his fraud-in-the-inducement cause of action.

As the majority correctly notes (maj. opn. *ante*, at pp. 7–10), Guan did not, by any means, abandon his failure of consideration theory of rescission. But he did not push it nearly as hard as he did his fraud theory. Guan's heavy emphasis on his fraud theory, however, had certain consequences, including most notably, the trial court's conclusion that Guan's rescission cause of action was unitary in nature.

6

## 2. *The trial court mistakenly accepted Guan's fraud theory as the only theory of rescission*

The trial court, which oversaw Guan's case from start to finish, came to regard Guan's rescission cause of action as being based on a unilateral theory. By way of example, during closing argument, the trial court stated: "Guan's argument is not benefit of the bargain or out of pocket loss. *Guan's argument is that the contract is void ab initio. The fraud caused the contract not to form.*" (Italics added.)

The trial court expanded on its understanding in its tentative written decision, "Guan's operative complaint, his [FAC], pleads causes of action for rescission of the contract; cancellation of the contract; money had and received; promissory estoppel; and fraud in the inducement. *These causes of action alleged that Hu had no intention when she signed the contracts to comply with a written instruction to sell the house, and, therefore, the contract is subject to rescission or some other remedy to restore the parties to their precontract position.*" Neither of the parties, including Guan, objected to this statement as inaccurate; as a result, it was incorporated into the trial court's final statement of decision.[2] In its final statement of decision, the trial court went on to add the following: "[Guan] argued that when

---

[2] Ironically, Guan never reminded the trial court of its failure of consideration theory when it moved for leave to conform its pleadings to the proof at trial by adding a breach of contract cause of action.

7

[Hu] signed the contract . . . she did not intend to sell the house even if she received proper written notice and that her promise to do so was a misrepresentation. *This is the premise underlying* [*Guan's*] *claims to rescind, cancel and void (for fraud) the contract.*" (Italics added.) In other words, for whatever combination of reasons, the trial court apparently perceived at the time it wrote its statement of decision that Guan was not proceeding on a dual theory of rescission that included a failure of consideration theory, as well as fraud theory.

Through this singularly focused understanding of Guan's rescission cause of action, the trial court viewed and assessed the evidence. For example, during Guan's closing argument, the trial court was plainly concerned with the dearth of evidence supporting Guan's fraud-based claims (rescission and fraud in the inducement): "So, essentially, your argument is that there was fraud in the inducement and that . . . she had no intention to perform the contract . . . . [¶] Isn't that a real gamble? [¶] . . . You have no evidence at the time she didn't intend to perform the contract. That's at the time she signed the contract. . . . [¶] There's no evidence right then that she didn't intend to perform the contract."

This paucity of evidence explains why the trial court ultimately found against Guan on his rescission and fraud-in-the-inducement causes of action: "[Guan] argued but did not prove that Hu, at the moment when she signed the contract, did not intend to perform her contract obligation to sell the house when and if Chen gave her written instruction

8

that she do so. There is evidence, but not sufficient evidence, . . . to support rescission of the contract."

However, it is also manifest from the entire record that the trial court found that there was in fact a failure of consideration (i.e., Hu failed to honor the promises that she made to Guan and QiWei Chen (Chen), her paramour). As the court stated in its statement of decision: "Hu breached the contract in failing to take any steps to sell the house after receiving Chen's email directing her to do that on July 21, 2012 . . . . [¶] Chen's July 21, 2012, email was unequivocal that Hu was to sell the house. Chen did not at any time retract or qualify that written instruction. Hu took no steps whatsoever to initiate the sale of the house." Hu's defenses to this failure of consideration claim, according to the trial court, were either "not believable," "not tenable," or had "no support."

"The meaning of a court order or judgment is a question of law within the ambit of the appellate court. [Citation.] "The true measure of an order . . . is not an isolated phrase appearing therein, but its effect when considered as a whole. [Citations.] In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then reference may be had to the circumstances surrounding, and the court's intention in the making of the same." (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429.)

9

Consequently, it appears from the record that the trial court did indeed find that Guan had established a failure by Hu to provide consideration—which, as stated above, was an alternate legal theory on which Guan's rescission theory stood. Thus, in finding that Guan had established a failure of consideration, the trial court effectively determined that Guan had prevailed on his alternate theory for rescission. Had the trial court focused on the fact (or had it been reminded in a timely and concrete manner) that Guan's theory of rescission was not unitary in nature but based in part on a failure of consideration theory, the court clearly would have awarded rescissionary damages (and possibly also adjusted the equities pursuant to section 1692). But that is not what the trial court did. Instead, the trial court awarded Guan a form of benefit-of-the-bargain damages, something that is not permitted under California's law of rescission.

As our Supreme Court has observed, the damages available for a breach of contract cause of action versus one for a rescission, are quite different: "The award given in an action for [breach of contract] compensates the party not in default for the loss of his 'expectational interest'—the benefit of his bargain which full performance would have brought. [Citation.] Relief given in rescission cases—restitution and in some cases consequential damages—puts the rescinding party in the status quo ante, returning him to his economic position before he entered the contract." (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304 316, fn. 15.)

10

Accordingly, the judgment in favor of Guan should be affirmed, but the matter should be remanded so that the trial court, after briefing and argument from the parties, may reconsider and reconfigure its award of damages so that it complies with California law on rescission.

The majority attempts to dismiss the analysis of the dissent by pointing to the undisputed fact that the trial court, in its statement of decision, determined that the evidence did not establish rescission. (Maj. opn. *ante,* at p. 20.) Closing one's eyes to the trees does not make the forest go away.

The majority's argument is not only disingenuous in that it is a clear departure from the majority's gestalt-approach to re-engineering the trial court's intentions (which the majority uses to resuscitate a breach of contract claim despite the trial court's express dismissal with prejudice of that cause of action), but also maladroit in its failure to recognize that the analysis of the dissent begins with an acknowledgement that the trial court found no rescission because it focused exclusively on a fraud theory as opposed to a failure of consideration theory. The dissent's approach does not re-conjure a cause of action; instead, it simply points out that the trial court forgot to consider an alternative theory of rescission—a theory that had been pleaded and which, based on the trial court's findings, a theory that if remembered would have justified a finding for Guan on rescission for lack of consideration. That the parties did not argue this theory on appeal is of no consequence. The meaning of a court order or judgment is,

11

as noted above, a question of law subject to our independent review (*In re Ins. Installment Fee Cases, supra*, 211 Cal.App.4th at p. 1429), which means that we give "no deference" to the trial court's ruling or the reasons for its ruling. (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 628.) Accordingly, in my view, the trial court's indefensible resort to breach of contract damages requires a remand for consideration of an appropriate rescission-based remedy.

## II. The Majority Misconstrues the Record

In order to justify its holding, the majority has taken a number of unusual steps, which include the construction of an alternative history of this case.

On August 25, 2015, the trial court dismissed without leave to amend the breach of contract cause of action from Guan's second amended complaint (SAC). According to the majority, however, the trial court made a mistake in dismissing the breach of contract cause of action without leave to amend: Guan "had adequately pleaded a cause of action for breach of contract in his second amended complaint, and the trial court erroneously sustained Hu's demurrer to that cause of action." (Maj. opn. *ante,* at p. 17.) The majority's assertion is not only devoid of any meaningful textual and legal analysis of Guan's pleadings, but it is also plainly contradicted by the record. The record clearly shows that the trial court repeatedly demanded that Guan make certain changes in his breach of contract cause of action, including clarifying whether the parties' contract was oral or written or some combination of the two, and that Guan

12

repeatedly failed to do so: "The changes made in the [SAC] don't cure the defects previously noted by the Court. . . . [Guan makes] the same arguments the Court previously found to be meaningless. . . . Further, in re the prior demurrer, the Court stated that 'it appears that the actual agreement was part written and part oral. . . . Any amendment must clarify the nature of the [contract] sued upon . . . .' The [SAC] still fails in this regard." Given Guan's repeated failure to correct the demonstrable defects identified by the trial court with the breach of contract cause of action, it cannot reasonably be maintained that the trial court abused its discretion when it dismissed that cause of action with prejudice.

Even more bizarrely, the majority asserts that the trial court itself "realize[d]" that its dismissal of the breach of contract cause of action with prejudice was a mistake and sought to correct that mistake when Hu challenged Guan's third amended complaint (TAC) and his new cause of action for rescission. (Maj. opn. *ante,* at p. 16.) The majority, however, does not (and cannot) point to any oral or written statement by the trial court in the record before us indicating or even suggesting that it regarded its ruling on the SAC as a mistake and was trying to correct that mistake through its ruling on Hu's demurrer to the TAC. In fact, even when the trial court had the opportunity posttrial to revive Guan's breach of contract cause of action, it refused. Moreover, there is little evidence that even Guan thought the trial court's dismissal of its breach of contract cause of action was a mistake at the time or later. On the record

13

before us, there is no indication that Guan ever petitioned for an extraordinary writ challenging the trial court's ruling, or filed a motion for reconsideration. Notably, if Guan had actually believed that the trial court's ruling on his breach of contract cause of action was a prejudicial error, he could have dismissed the remaining causes of action immediately following the court's order on the SAC, and then appealed from the subsequent judgment with regard to the breach of contract claim. (See Code Civ. Proc, § 472c.) But Guan did not take this action. In fact, Guan did not even seek review of the court's dismissal with prejudice ruling in its subsequent cross-appeal.

The majority further asserts that Guan's cause of action for rescission was really a "restated" cause of action for breach of contract which the trial court purportedly "allowed to proceed." (Maj. opn. *ante,* at p. 18.) The sole support from the record that the majority cites for this remarkable contention is the following statement by the trial court in overruling Hu's demurrer to the TAC: "[Guan] adequately alleges the *contractual basis* for the [rescission] claim." From the phrase "contractual basis," the majority infers that the rescission cause of action is really a breach of contract cause of action. The majority's reasoning falls short of the mark because every rescission cause of action, (as with every breach of contract cause of action) must have a contractual basis, otherwise, there would be nothing to rescind (or to be breached).

14

Moreover, the trial record flatly contradicts the majority's claim. Hu challenged the legal sufficiency of Guan's rescission cause of action in the TAC on a variety of grounds, *including* that it was just a "rehash" of Guan's legally insufficient breach of contract cause of action. The trial court found all of Hu's arguments, including the "rehash" argument, wanting and overruled the demurrer as to the rescission cause of action and all other causes of action in the TAC. Critically, when Hu argued in its summary judgment motion that Guan's rescission cause of action was nothing more than a recycled version of the "breach of contract [cause of action] that had already been dismissed with prejudice," the trial court once again found the argument to be without merit. In short, the trial court repeatedly had the opportunity to find that Guan's rescission cause of action was nothing more than a "restated" breach of contract cause of action and each time it refused to do so. Put a little differently, the trial court consistently found Guan 's rescission cause of action to be separate and distinct from the dismissed breach of contract claim.

There is, in sum, little to commend in the majority's counterfactual, alternative history of this case. The record does not show that the trial court ever regarded (a) its dismissal of the breach of contract cause of action as a mistake or (b) Guan's rescission cause of action as nothing more than a restated breach of contract cause of action.

As discussed below, there is even less to commend in the majority's alternative version of the law.

## III.  The Majority Turns the Law on Its Head

### A.  THE MAJORITY MISAPPREHENDS RESCISSION

The majority asserts that rescission is not a cause of action separate and distinct from a breach of contract cause of action but merely a remedy and that Guan's cause of action for rescission "regardless of its label" is a breach of contract cause of action.  (Maj. opn. *ante,* at p. 16.)  Specifically, the majority urges that "the allegations in Guan's first cause of action for 'rescission' establish a cause of action for breach of contract, regardless of its label or the remedies he sought."  (Maj. opn. *ante,* at p. 16.)  The majority is mistaken—a breach of contract cause of action and a rescission cause of action are mutually exclusive.

As the leading treatise on California law makes plain, there are (and there have long been) two distinct causes of action for a plaintiff in a contract-based dispute:  seek "damages for breach of contract" or seek "restitution after rescission."  (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 515–540, pp. 648–668 and §§ 541–552, pp. 668–680.)[3]

_____

[3] In fact, prior to 1961 and the enactment of section 1692, California law recognized two different actions by which a plaintiff could obtain rescissionary relief— the first an " 'action to enforce a rescission' " and the second an " 'action to obtain a rescission' " (California Law Revision Commission's Recommendations and Study relating to Rescission of Contracts (1960) in 3 Cal.Law Revision Com.Rep. (Sept. 1961) D–5, D–15 (Law Revision Report); see

Moreover, although both rescission and breach of contract are contract-based causes of action, it has long been recognized that they are distinctly different and that difference is of "practical importance." (Koford, *Rescission at Law and Equity* (1948) 36 Cal. L. Rev. 608, 609.) "When one party has been injured by a breach of contract and she either lacks the ability or the desire to keep the contract alive, she can choose between two different remedies. [Citation.] She can treat the contract as rescinded and recover damages resulting from the rescission. Or she can treat the contract as repudiated by the other party and recover damages to which she would have been entitled had the other party not breached the contract or prevented her performance. [Citation.] *An action for rescission is based on the disaffirmance of the contract and an action for damages for breach of contract is based on its affirmance*. [Citations.] *An action for rescission and an action for breach of contract are alternative remedies. The election of one bars recovery under*

---

*Philpott v. Superior Court* (1934) 1 Cal.2d 512, 524 [discussing pre-1961 law]; *Runyan v. Pacific Air Industries, Inc.*, *supra*, 2 Cal.3d at pp. 311–312 [same].) The first was an action at law, while the second was an "action in 'equity.'" (Law Revision Report, *supra*, p. D–5.) The 1961 legislation "abolished the action to obtain court rescission and left only an action to obtain relief based upon a party effected rescission." (*Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 913.)

17

*the other.*" (*Akin v. Certain Underwriters at Lloyd's London* (2006) 140 Cal.App.4th 291, 296, italics added.)

Here, the majority loses its way by equating a failure of consideration *theory* of rescission with a breach of contract *cause of action.* Plainly and simply, a rescission cause of action, whatever its underlying theory, is something very different from a breach of contract cause of action.

B.    THE MAJORITY IMPROPERLY DISREGARDS THE DISMISSAL WITH PREJUDICE OF GUAN'S BREACH OF CONTRACT CAUSE OF ACTION

As noted above, Guan initially pursued a theory of recovery based on the affirmance of the parties' contract. Guan, however, could not successfully allege a breach of contract cause of action. After three unsuccessful attempts, the trial court dismissed the claim without leave to amend. The majority treats that dismissal as effectively a nonevent. (Maj. opn. *ante,* at pp. 15–17.) Nothing could be further from the truth.

Although California is a "code pleading" state, pleadings and the causes of action asserted therein are not empty formalities. (See generally, 4 Witkin Cal. Procedure (5th ed. 2008) Pleadings §§ 1, 33, 419, pp. 65, 97, 556–557.) In fact, pleadings, especially complaints, perform an essential role—they determine what a party must prove at trial in order to be entitled to relief. As our Supreme Court has observed, "The complaint in a civil action serves a variety of purposes [citation], of which two are relevant here: it serves to frame and limit the issues [citation] and to apprise the defendant of the basis upon which the plaintiff is

18

seeking recovery." (*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211–212; *Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1048 [" 'The pleadings are supposed to define the issues to be tried' "].)

California courts have long held that "orders sustaining demurrers without leave to amend" effectively "constitute a trial on the merits" and, as such, "must be considered as judgments after trial." (*Smith v. City of Los Angeles* (1948) 84 Cal.App.2d 297, 302.)  This is so because it is " 'well settled that a trial need not involve the determination of a fact, but may consist solely or partially in the determination of an issue of law.' " (*Ibid.*) Consequently, sustaining a demurrer without leave to amend effectively dismisses that claim with prejudice and California courts have held that "with prejudice," as that term is used in the context of dismissals, "clearly means the plaintiff's right of action is terminated and may not be revived." (*Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1086–1087.)[4]

_____

[4] Federal courts take a similar view:  "Dismissal "without leave to amend" means that those claims are no longer part of the active proceedings, it does not mean that Plaintiff can continually attempt to amend his complaint to re-allege the dismissed claims or seek discovery on the dismissed claims." (*Bever v. Citimortgage, Inc.* (E.D.Cal. May 15, 2014, No. 1:11–cv–01584–AWI–SKO) 2014 WL 2042015 at *3; see *Lazo v. U.S.* (S.D. Cal. Feb. 9, 1999, Nos. 98CV0119–B (LSP), 99CV0037–B) 1999 WL 250893 at

The majority tries to escape from the jurisprudential effect of the dismissal with prejudice of Guan's breach of contract cause of action by adopting a dangerous "anything goes" approach to court orders.[5]

The majority asserts that the trial court purportedly "allowed" Guan to replead his dismissed breach of contract cause of action as a rescission cause of action, which means that the trial court was implicitly "correct[ed] its earlier error—the sustaining of the demurrer to the contractual cause of action in the [SAC]." (Maj. opn. *ante,* at pp. 17, 18.)

There are several highly troubling aspects to the majority's conclusion. First, as discussed *supra,* it is based on wishful speculation, not fact. Tellingly, the majority does not cite to any written or oral statement by the trial court evincing such a decision or even the intent to make such a decision. In fact, the record before us suggests the exact

---

*2 ["by dismissing without leave to amend, the Court means exactly that—without leave to amend, ever"].)

[5] At oral argument on rehearing, Guan's counsel extended this procedural apostasy by arguing that even if a trial court expressly excluded a plaintiff's breach of contract claim from the lawsuit, the plaintiff—on his/her own authority— could nonetheless successfully reinsert that claim into the lawsuit through such relatively informal means as responses to form interrogatories and remarks during opening statement. In other words, Guan's counsel argued that a litigant's desire alone can trump a trial court's written order. Such a position would turn our entire system of justice upside down.

20

opposite conclusion from the one reached by the majority. When Guan moved posttrial to conform his pleadings to the proof presented at trial by adding a breach of contract claim, the trial court denied the motion.

Second, the majority's reasoning would invite havoc into the legal system. Under the majority's approach, a trial court, at any time and without any notice whatsoever to the litigants, could reverse itself on an issue of supreme importance to the parties and to the conduct of the litigation. As noted above, the order dismissing Guan's breach of contract claim without leave to replead was not some minor, insignificant order, such as a scheduling order for a status conference. Rather, the order was the legal equivalent of a judgment after a trial on the merits. (*Smith v. City of Los Angeles*, *supra*, 84 Cal.App.2d at p. 302.)

To allow a court, as the majority does here, to implicitly reverse a judgment without any due process is flatly contrary to our whole system of justice. Under current California law, if a trial court comes to believe that one of its prior interim orders was erroneous, it may, sua sponte, reconsider its decision, *provided* it "inform[s] the parties of this concern, solicit[s] briefing, and hold[s] a hearing." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108–1109.) Here, the trial court did *none* of those things.

21

## IV.    Conclusion

Any one reading the majority's opinion who has a passing familiarity with both the law and the writings of Lewis Carroll will be reminded of Alice's frustrating encounter with Humpty Dumpty after she fell through the looking glass:  " 'I don't know what you mean by "glory," ' said Alice.  Humpty Dumpty smiled contemptuously.  "Of course you don't—till I tell you . . . .  'When *I* use a word," Humpty Dumpty said, in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.'  'The question is,' said Alice, "whether you *can* make words mean so many different things.'  'The question is,' said Humpty Dumpty, 'which is to be the master—that's all."  (Carroll, *Through the Looking Glass* (Palazzo 2015), p. 109.)

Here, the majority, like Humpty Dumpty, has redefined words and the court record as it sees fit in order to reach the result it desires.  According to the majority, a rescission cause of action is not really a rescission cause of action, but a breach of contract cause of action.  According to the majority, a dismissal with prejudice of Guan's breach of contract cause of action is not really a dismissal with prejudice, and, in any event, that dismissed cause of action may be resurrected by anyone, at any time, and in any manner—a plaintiff can do it by sticking breach of contract allegations into rescission causes of action; the trial court can do it implicitly without a word to anyone until after the trial is over.

This is not how our judicial system is designed to function.  As our Supreme Court recognized long ago, even where a court has jurisdiction over a matter, " 'it is still limited in its modes of procedure, and in the extent and character of its judgments.  It must act judicially in all things, and cannot then transcend the power conferred by the law.' " (*Baar v. Smith* (1927) 201 Cal. 87, 100.)  If a court " 'transcend[s] the limits of its authority,' " the resulting judgment would be " 'absolutely void.' "  (*Ibid*.)

Here, the trial court effectively and correctly but not expressly found that Guan had prevailed on his rescission cause of action.  Accordingly, the judgment in favor of Guan should be affirmed.  However, because the trial court believed that Guan had not prevailed on his rescission cause of action but on some nonexistent breach of contract cause of action, it awarded Guan breach of contract damages and not rescissionary damages.  Accordingly, the matter should be remanded to the trial court for a reconsideration of the damages award.

I, therefore, respectfully concur in the majority's determination that judgment for Guan is proper, but I dissent from its conclusion and analysis that Guan's damages properly lie in a breach of contract theory.


JOHNSON, J.